Filed 5/22/26  Marriage of J.C.M. & A.G.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of J.C.M. and A.G.M. | |
| A.G.M., | D086442 |
| Plaintiff and Respondent, | (Super. Ct. No. 24FL002881C) |
| v. | |
| J.C.M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Rebecca G. Church, Judge.  Affirmed.

J.C.M., in pro. per, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

## I.  INTRODUCTION

J.C.M. (Father) appeals from an order denying his motion to quash an income withholding order (IWO) that A.G.M. (Mother) served on his

employer.  The IWO directed Father's employer to deduct regular child support amounts from Father's paycheck.  (See Fam. Code,[1] §§ 5208, 5230.)

As we will explain, Father has not established on appeal that the trial court erred in denying his motion to quash.  We accordingly affirm the trial court's order.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On December 5, 2024, the trial court entered a judgment of dissolution in the marriage of Father and Mother.  The judgment attached a marital settlement agreement (MSA) and incorporated its terms.

Father and Mother have two minor children.  The judgment included a child support order, under which Father was to pay a regular monthly amount of $2,501.  The MSA also includes an agreement that Father would pay that same amount in child support beginning on November 1, 2024.  The MSA further states that "[c]hild support payments shall be paid on the 1st of each month."  However, the MSA does not specify in what manner Father shall pay to Mother the child support obligation.

Unknown to Father, on the same date that it entered the judgment of dissolution, the trial court issued an IWO on form FL-195.  The IWO directs Father's employer to deduct $2,501 per month from Father's income to satisfy Father's child support obligation and to send that amount to the State Disbursement Unit.

According to Father, beginning in February 2025, his employer began withholding his child support payment from his income on a semimonthly basis.  Father states that he did not find out about the existence, or service, of

---

[1]     Unless otherwise indicated, all further statutory references are to the Family Code.

the IWO until he reviewed his paystubs on February 22, 2025. By this time Father, pursuant to the MSA, already paid the February 2025 child support payment.

On February 26, 2025, Father, representing himself without counsel, filed a "Request for Hearing Regarding Earnings Assignment." Father stated that (1) there was good cause to recall the IWO; and, alternatively, (2) he and Mother had entered into an agreement for payment of child support by an alternative arrangement.[2] In addition, Father's supporting declaration stated that Mother had failed to serve Father with the IWO.

Mother, through her counsel, filed a response along with a responsive declaration and a lodgment of exhibits. Mother's filings are not included in the appellate record.[3]

---

[2] On the form he filled out entitled "Request for Hearing Regarding Earnings Assignment," Father also checked a box pertaining to "arrearages" that was not applicable to his situation. It appears that Father attempted to use that portion of the form to obtain an order requiring Mother to reimburse him for an overpayment of the February 2025 child support amount. Specifically, Father contended that for the February 2025 payment, he paid Mother by check without knowing that his employer would later deduct the February 2025 child support amount from Father's income. Although the portion of the form that Father filled out was not the correct vehicle to obtain reimbursement for this alleged overpayment, if the claimed overpayment has not yet been refunded by Mother, Father may pursue a claim for reimbursement in the trial court using the appropriate procedures.

[3] It is Father's burden as the appellant to provide us with an adequate record on appeal. An opposing party's responsive filings are often a necessary component of an adequate appellate record. Here, however, because the issues presented by Father's appeal do not require us to review the contents of Mother's responsive filings, we reach the merits of Father's appeal despite the absence of those documents in the appellate record.

3

On May 30, 2025, the trial court conducted a hearing. The trial court denied Father's motion, concluding that (1) Father had not shown good cause to recall the IWO, and (2) Father had not proven the existence of an agreement for the payment of child support by an alternative arrangement. The trial court also stated that it did not "find any service issues."

Father timely appeals from the order denying his motion to quash the IWO.[4]

## III. DISCUSSION

Father seeks a reversal of the trial court's order denying his motion to quash, and he asks us to direct the entry of an order allowing him to pay child support by check at the beginning of each month, which he explains was the "status quo" prior to the issuance of the IWO.

A. *Relevant Statutory Provisions*

We begin by reviewing the relevant statutory provisions. Pursuant to section 5230, a trial court is required to include an IWO whenever it makes an order awarding child support. Specifically, that provision states, "(a) when the court orders a party to pay an amount for support . . . the court *shall* include in its order an earnings assignment order for support that orders the employer of the obligor to pay to the obligee that portion of the obligor's earnings due or to become due in the future as will be sufficient to pay an amount to cover both of the following: (1) The amount ordered by the court for support. (2) An amount which shall be ordered by the court to be paid toward the liquidation of any arrearage." (§ 5230, italics added.)

After receiving an IWO, the obligee may serve it by mail on the obligor's employer. (§ 5232.) The materials served on the employer by the

_____

[4] Mother has not appeared in this appeal.

4

obligee must include a copy of the IWO and "[a] written statement of the obligor's rights under the law to seek to quash, modify, or stay service of the earnings assignment order, together with a blank form that the obligor can file with the court to request a hearing to quash, modify, or stay service of the earnings assignment order with instructions on how to file the form and obtain a hearing date." (§ 5234.) The obligor's *employer* must deliver those items to the obligor within 10 days of being served with them. (§ 5234.)[5]

An obligor may bring a motion to stay the service of an IWO pursuant to section 5260. The statute describes two different grounds for such relief: (1) a showing of good cause that satisfies four enumerated statutory requirements or (2) the existence of an alternative arrangement for payment of child support. (§ 5260, subds. (a), (b).) An obligor may also move to quash an IWO on several other grounds, including that it "does not correctly state the amount of current or overdue support ordered by the courts." (§ 5270, subd. (a)(1).)

B.      *Father Did Not Establish Any Deficiencies in Service of the IWO*

Father's first contention is that the IWO is "void on its face" because "Mother's attorney did not serve Father with the [IWO], in violation of the . . . servicing obligations of [Family Code section] 215 (a)(b)." Father argues that "[i]n post judgment modification or enforcement proceedings, notice must be served on the opposing *party* . . . ."

This argument lacks merit because an IWO is not a postjudgment order controlled by the service provisions of section 215. Instead, as we have explained, an IWO is required to be served by mail by the obligee on the

_____

[5]      According to Father, he did not receive notice of the IWO from his employer.

obligor's employer. It is then the *employer's* responsibility to provide the included documents to the obligor. Father has not submitted any evidence showing that Mother failed to follow the proper procedures for serving an IWO on Father's employer.

C.  *Father Has Not Established a Denial of Due Process*

Father next contends that he was denied due process in connection with the trial court's issuance of the IWO.

As we understand Father's contention, he believes that he should have been given notice before the trial court issued the IWO. Father's contention lacks merit based on the statutory scheme we have detailed above. The applicable law states that an obligor may challenge an IWO *after* it is served by following the procedures explained in section 5260 and 5270. Father took advantage of those procedures here and was given a full opportunity to raise arguments challenging the IWO. Father accordingly received due process.

D.  *Section 5230 Is Applicable Here To Require Issuance of the IWO*

Father next contends that for two reasons his case is not subject to section 5230, subdivision (a) requiring the court to issue an IWO when making a child support order.

First, Father points to the statutory language stating that "*when the court orders a party to pay an amount for support . . .* the court shall include in its order an earnings assignment order." (§ 5230, subd. (a).) According to Father, that provision does not apply to his situation because "the support amount was privately and lawfully mediated and then adopted by the trial court in a judgment." In that instance, according to Father, the court has not "order[ed] a party to pay an amount for support." (§ 5230, subd. (a).) The argument fails because, in entering judgment, the trial court *did* issue an order requiring Father to pay child support. The judgment states that "child

6

support is ordered." In doing so, the judgment incorporates the "Child Support Information and Order Attachment," which details the trial court's child support order.[6]

Second, Father contends that issuance of an IWO was improper because "there were no child support arrears, and there is no history of support non-payment nor late payment since the signing of the [marital settlement agreement." This argument fails because it is based on a misunderstanding of the applicable statute. Under section 5230, the trial court is required to issue an IWO when making a child support order, *regardless* of whether the obligor owes any arrears. (§ 5230, subd. (a).) To support his position, Father cites Code of Civil Procedure, section 706.030, which allows a local child support agency to issue an "earnings withholding order . . . on a writ of execution to collect *delinquent amounts* payable under a judgment for the support of a child, or spouse or former spouse, of the judgment debtor." (Code Civ. Proc., § 706.030, subd. (a), italics added.) However, that provision is inapplicable here, as the trial court issued the IWO pursuant to section 5230, subdivision (a); the order was not issued pursuant to section 706.030.

---

[6] Father also contends, without elaboration, that he was denied due process because "Mother's attorney circumvented the reporting requirements to the local child support agency codified in [Family Code section] 4701(d)(1)(2)." The statutory provision that Father identifies directs the Department of Child Support Services to administer a statewide automated system for the reporting of court-ordered child support obligations to credit reporting agencies, which must include certain standards. Father does not explain the relevance of that provision here, and we perceive no manner in which it applies.

E.  *Father Has Not Identified an Agreement For an Alternative Arrangement to Pay Child Support*

Much of Father's appellate argument focuses on the contention that, when entering into the MSA, he and Mother decided they would continue to follow the status quo that was in place prior to the entry of the judgment of dissolution.  According to Father, the status quo consisted of him making monthly child support payments by check directly to Mother at the beginning of each month.

Under section 5260, a trial court may stay service of an IWO if it finds that "an alternative arrangement exists for payment."  (§ 5260, subd. (a).) The statute specifies that "[a]n alternative arrangement for staying a wage assignment order shall require a written agreement between the parties that provides for payment of the support obligation as ordered other than through the immediate service of a wage assignment."  (§ 5260, subd. (b)(2).)

Here, the trial court found that no such alternative arrangement existed.  We apply a substantial evidence review in evaluating the trial court's factual findings.  (See *In re Marriage of Heiner* (2006) 136 Cal.App.4th 1514, 1520.)

The only part of the MSA addressing the method for payment of child support states, "Child support payments shall be paid on the 1st of each month."  Notably, this language does not state that payment will be made by check directly from Father to Mother.  It also does not state that the parties are adopting an arrangement for payment of child support "other than through the immediate service of a wage assignment" (§ 5260, subd. (b)(2)). Nor does it state that the parties desire to maintain the status quo regarding the arrangement for making child support payments.  Based on those considerations, the trial court reasonably concluded that the parties did not

8

enter into an alternative agreement for payment of child support by check, rather than by an IWO, within the meaning of section 5260.

F.   *The Trial Court Did Not Abuse Its Discretion by Determining That Father Failed to Establish Good Cause to Stay Service of the IWO*

Finally, Father contends that he showed good cause to stay the service of the IWO pursuant to section 5260, subdivision (a).

Section 5260 states that good cause for staying an IWO requires the existence of four specific conditions:

> "(A) The court provides a written explanation of why the stay of the wage assignment would be in the best interests of the child.
>
> "(B) The obligor has a history of uninterrupted, full, and timely payment, other than through a wage assignment or other mandatory process of previously ordered support, during the previous 12 months.
>
> "(C) The obligor does not owe an arrearage for prior support.
>
> "(D) The obligor proves, and the court finds, by clear and convincing evidence that service of the wage assignment would cause extraordinary hardship upon the obligor."  (§ 5260, subd. (b)(1).)

"Determinations of good cause are generally matters within the trial court's discretion, and are reversed only for an abuse of that discretion." (*Laraway v. Sutro & Co., Inc.* (2002) 96 Cal.App.4th 266, 273.)

The first condition concerns the best interests of the children.  (§ 5260, subd. (b)(1)(A).)  At the hearing on Father's motion, Mother's counsel argued that in light of one of Father's reasons for wanting to pay child support by check, it would not be in the best interest of the children to stay service of the IWO.  Specifically, according to Father, he should be permitted to pay child support by check so that he could "reasonably deduct reimbursement of children's medical care and childcare" from his child support payments if Mother failed to reimburse him for her share of those expenses.  Father's

9

declaration elaborated: "Father is health insurance payee and daycare payee for [the parties' children]. By circumventing the status quo of payment established by the [marital settlement agreement], the Court removes ability for Father to reasonably deduct reimbursement of children's necessary medical care and childcare, which Mother has previously sought to disavow financial responsibility without the specter of future litigation." As Mother's counsel explained, it would not be in the best interest of the children to allow Father to unilaterally deduct amounts from the child support payments because the amount of available support would be impacted, and self-help was not a permissible manner for resolving disputes over reimbursement.[7] Moreover, counsel explained that the IWO was in the best interest of the children "because it removes a reason for communication and for interaction between the parties, which reduces tension and ultimately benefits the children." The trial court was within its discretion to find counsel's arguments persuasive and to conclude that, for those reasons, staying service of the IWO was not in the best interest of the children.

As for the second condition, Father failed to prove that he had "a history of uninterrupted, full, and timely payment, other than through a wage assignment or other mandatory process of previously ordered support,

---

[7] As counsel pointed out, Father's desire to deduct amounts that he believed he was owed as reimbursement for medical and childcare costs was contrary to the terms of the marital settlement agreement, which states reimbursement shall be governed by section 4063. That statutory provision requires a party to apply to the court for resolution of disputes over reimbursement. (§ 4063, subds. (b)(4), (c).) In making its ruling, the trial court noted that Father's intention to deduct amounts from child support payments "is not a permissible method of reimbursement pursuant to the judgment and Family Code 4063 which has been ordered in this case."

10

during the previous 12 months." (§ 5260, subd. (b)(1)(B).) Father stated in his declaration that he had, as of the date of his declaration, paid Mother "on time in the form of *nine* personal checks or cashier's checks." However, that statement was insufficient to establish payment for the previous *12 months*; nor was it sufficient to show that there was any "previously ordered support." (§ 5260, subd. (b)(1)(B).)

The third condition does not disqualify Father, as the parties agreed that Father did not owe any arrearages. (§ 5260, subd. (b)(1)(C).)

Finally, for the fourth condition, Father was required to prove that service of the IWO "would cause extraordinary hardship upon the obligor." (§ 5260, subd. (b)(1)(D).) Father argues that service of the IWO on his employer would cause him hardship because of "the risk of potential employer retaliation" due to service of the IWO. However, at the hearing in the trial court, Father was not able to identify any evidence suggesting that his employer would retaliate against him for service of the IWO. Instead, Father brought up an unrelated issue involving claims against his employer-provided health insurance. Moreover, Father's fear of retaliation from his employer is unfounded because employers are statutorily prohibited from using an IWO as ground for adverse action against an employee. (§ 5290.) Accordingly, Father failed to satisfy the fourth condition requiring a showing of extraordinary hardship.

In sum, we conclude that the trial court was well within its discretion to conclude that Father failed to show good cause for an order staying service of the IWO.

11

## IV.  DISPOSITION

The order denying Father's motion to quash the IWO is affirmed.

RUBIN, J.

WE CONCUR:

DATO, Acting P. J.

KELETY, J.